UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH MICHAEL GREEN,

    Plaintiff,

v.                                                   Case No:   8:16-cv-2890-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Joseph Michael Green, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**     **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for SSI on September 17, 2012, alleging disability beginning January 27, 2007. (Tr. 17, 279). Plaintiff's application was denied initially on February 5, 2013, and upon reconsideration on May 9, 2013. (Tr. 146-51, 160-64). Plaintiff requested a hearing and, on December 1, 2014, an administrative hearing was held before Administrative Law Judge Margaret Craig ("the ALJ"). (Tr. 35-53). A second hearing was held before the ALJ on March 11, 2015. (Tr. 54-103). On April 22, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability from September 17, 2012, the date Plaintiff's application was filed. (Tr. 17-28). Plaintiff filed a request for review which the Appeals Council denied on August 15, 2016. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on October 12, 2016.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 17, 2012, the application date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spines; seizure disorder, not otherwise specified; neurocognitive disorder, not otherwise specified; and substance abuse disorder. (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals

the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b). Function by function, the claimant remains able to lift and or carry 20 pounds occasionally and 10 pounds frequently, stand and or walk 6 hours in a workday, sit 6 hours in a workday, and he requires a cane to ambulate for more than 10 feet. He can never climb ramps or stairs. He should avoid concentrated exposure to vibrations and hazards such as heights and dangerous moving machinery. He is limited to simple and routine tasks involving only occasional contact with coworkers, supervisors, and the general public. He is limited to work environments with little or gradual workplace change and no fast paced work or assembly line work.

(Tr. 22). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a plumber. (Tr. 27).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 27-28). Specifically, the ALJ found that Plaintiff can perform such occupations as small products assembler, polypacker/heat sealer and final inspector. (Tr. 28). The ALJ concluded that Plaintiff had not been under a disability since September 17, 2012, the date the application was filed. (Tr. 28).

**II.  Analysis**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by considering the CDI Investigative Report; and (2) whether the ALJ erred by failing to properly develop the record. The Court will address each issue in turn.

**A. Whether the ALJ erred by considering the CDI Investigative Report.**

The record shows that the ALJ entered into evidence a Cooperative Investigations Unit ("CDI") report that was completed by the Cooperative Disability Investigations Unit on January 20, 2013. (Tr. 39, 511-517). The investigation was initiated at the request of a supervisor from the Tampa, Florida, Division of Disability Determinations based on disparities in the available evidence, which prompted suspicions that Plaintiff was exaggerating the severity of his functional limitations. (Tr. 513). The investigation was conducted by a Financial Crime Investigator with the Florida Department of Financial Services, detailed to the Tampa CDI unit, who visited local establishments within the vicinity of Plaintiff's listed address, showed the witnesses a photograph of Plaintiff, and spoke with individuals believed to have knowledge of Plaintiff's actions and abilities. (Tr. 514). The synopsis of the report provided that

> Four persons, believed to be familiar with GREEN's actions and abilities, described him as being essentially unimpaired both physically and mentally. These witnesses described GREEN as a regular customer who shops alone at three separate convenience stores. He frequents one store on an almost daily basis and the other two on a weekly basis. One witness reported that GREEN usually walks to the store and another witness reported GREEN drives a sand colored truck. The witnesses have never seen GREEN use any type of assistive device or display and gait disturbances. GREEN makes good eye contact when speaking, shops independently, and makes his purchases with cash.

(Tr. 513).

Further, the CDI report indicated Plaintiff had been cited for several traffic offenses since 2010, including obstructing traffic (November 2010); crash and leaving the scene of a crash (March 2012); and failure to pay a traffic fine (September 2012). The report also indicated Plaintiff's driver's license was revoked as a financial responsibility suspension relative to insurance and a crash (Tr. 514);

At both the first hearing and at the supplemental hearing, counsel for Plaintiff objected to the introduction of the CDI report into the record after the ALJ asked counsel if he had any objections. (Tr. 38-39, 56). The ALJ provided no reason at the hearings or in her decision for overruling the objections.

In her decision, the ALJ addressed the CDI as follows,

> Thereafter, the Tampa Cooperative Disability Investigations (CDI) Unit conducted an investigation for the purpose of determining the claimant's true level of functioning. The claimant was witnessed to shop alone at three separate convenience stores. He apparently frequents one of these stores on a daily basis and the other two on a weekly basis. He was observed to drive a sand colored truck. He apparently does not use an assistive device or display any gait disturbances. He reportedly makes good eye contact when speaking, shops independently, and makes purchases with cash. One witness reported that he selects his own items on the floor, normally beer, and asks for cigarettes once he approaches the counter. On one occasion, the claimant was reportedly angered within a business when an associate accused him of shoplifting. The claimant apparently strongly verbalized and told the associate to come outside so he could physically rectify the situation. (Exhibit B6F).

(Tr. 25). In addition, the ALJ noted that

> the claimant stated that he does not drive, relies on his wife for transportation and he had to surrender his license after he began having seizures. (Exhibit B13F) Yet, the CDI reported dated January 2013, shows the claimant was observed to drive a truck, in spite of having his driver's license suspended indefinitely in December of 2012. (Exhibit B6F).

(Tr. 26).

Plaintiff argues that the ALJ erred by admitting the CDI report into the transcript and by considering the report in making her decision. (Doc. 20 p. 7-15). While acknowledging that an ALJ may receive evidence at the hearing although the evidence would not be admissible under the rules of evidence used by the court, Plaintiff contends that it was erroneous to consider the report given that it contained nothing more than statements concerning Plaintiff's physical and/or mental capabilities from unidentified, unnamed witnesses who were shown an unauthenticated

- 7 -

photograph which was purportedly of Plaintiff. (Doc. 20 p. 7). Plaintiff notes that the witnesses were never identified, the purported photograph of Plaintiff was never offered into evidence, and that there seemed to be no effort to produce even the author of the CDI report. (Doc. 20 p. 11). Plaintiff argues that the CDI report was provided to multiple physicians and that the report tainted their findings and opinions. (Doc. 20 p. 12-14).

In response, Defendant argues that the ALJ properly admitted into evidence and considered the CDI report without infringing on Plaintiff's due process rights. (Doc. 20 p. 15). Defendant contends that the ALJ admitted the CDI report into evidence pursuant to the SSA's Program Operations Manual System ("POMS") and properly considered it, along with other evidence, in making her disability determination. (Doc. 20 p. 15). Defendant argues that Plaintiff failed to establish prejudice resulting from his inability to cross-examine the CDI investigator or witnesses. (Doc. 20 p. 17). Further, Defendant argues that the ALJ's decision does not rely exclusively, or even heavily, on the CDI report and that remand would not change the ALJ's overall determination. (Doc. 20 p. 17-23).

The SSA's Program Operations Manual System ("POMS") addresses the use of CDI reports in disability determinations. POMS DI 33025.036, entitled "Disability Hearing Officer's Use of Cooperative Disability Investigations Unit (CDIU) Report of Investigation (ROI) Evidence," provides that the

> majority of an ROI is a report of third party interviews by highly skilled interviewers. Consider the reports, weighed with the totality of the evidence, and evaluate to determine whether, and the extent to which the other evidence supports the reports. The ROI helps you to evaluate the credibility of a claimant's statements. Surveillance information in both video and narrative form can provide snapshots of a claimant's observed functional ability. We consider this information with all the other evidence to reach conclusions about the claimant's medical impairment(s) and, material to the determination of whether the claimant is disabled, if the claimant is able to work on a sustained basis.

The POMS also addresses disclosure of confidential informants, noting that the ROI is sanitized "to protect the identity of the confidential informants and investigative techniques, or remove other information that can be properly withheld under the Privacy Act (5 U.S.C. 552a(d) and 20 CFR 401.35." *Id.*

Although the POMS broadly provides that an ALJ shall consider CDI reports, in this case, the Court finds that it was improper for the ALJ to have admitted the CDI report at issue into the record. As Plaintiff aptly summarizes, the CDI report contains unverifiable statements, from unnamed witnesses, who were shown an unauthenticated photograph purportedly of Plaintiff. Despite Plaintiff's counsel's objections at the first and supplemental hearings, the CDI report was entered into evidence and no mention of the objections was made in the ALJ's decision. Further, the author of the CDI report was never produced at the hearing and the purported photograph of Plaintiff was never entered into evidence.

An ALJ may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court. 20 C.F.R. § 404.950(c). Nevertheless, given the ALJ's failure to provide an explanation for overruling the objections, the Court finds it was erroneous for the ALJ to accept the CDI report at face value.

The Court rejects Defendant's argument that Plaintiff has failed to show that he was prejudiced by the ALJ's admittance of the CDI report into the record. The ALJ discussed the CDI report at length in her decision and relied upon it in finding Plaintiff's complaints not entirely credible. Further, as Plaintiff notes, the CDI report was examined and considered by numerous physicians whose findings the ALJ relied upon.

Upon remand, the ALJ shall reopen the case for hearing, directly address Plaintiff's objections concerning the CDI report, develop the record as necessary, and conduct any further proceedings as appropriate.

**B.  Whether the ALJ erred by failing to properly develop the record.**

The record shows that examining psychologist Fred Albert, Ph.D., completed a Report of Evaluation on December 21, 2012. (Tr. 507-10).  In his report, Dr. Albert noted that an earlier reported dated August 25, 2008, from Dr. Bruce Whiting, had been provided to him by the Disability Determination Services. (Tr. 506).  Dr. Whiting's report is not provided in the record.

Plaintiff argues that the ALJ violated her duty to develop the record by failing to include Dr. Whiting's report in the record. (Doc. 20 p. 24-25).  Defendant argues that Plaintiff failed to demonstrate that he had been prejudiced because the record does not contain Dr. Whiting's report. (Doc. 20 p. 26).

The Eleventh Circuit has held that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Harrison v. Comm'r of Soc. Sec.*, 2014 WL 2853764 (11th Cir. June 24, 2014).

Here, the ALJ did not err by failing to develop the record as to Dr. Whiting's report.  Dr. Albert's examination findings were based on his professional examination of Plaintiff, not on Dr. Whiting's report.  Dr. Albert did not reference Dr. Whiting's report as support for his conclusions regarding Plaintiff's current level of functioning in December 2012, nor did he many any comparison between Dr. Whiting's report of Plaintiff's condition in 2008 and his current condition. (Tr. 507-10).  Further, Dr. Whiting's 2008 report is before the twelve month time period preceding Plantiff's application in October 2012. *See* 20 C.F.R. § 416.912(d) ("Before [the Commissioner]

make[s] a determination that [claimant is] not disabled, [the Commissioner] will develop [claimant's] complete medical history for at least the 12 months preceding" claimant's application).

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 9, 2018.

*/s/ Douglas N. Frazier*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties